IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CHANG S. LIU, | : | HON. JEROME B. SIMANDLE |
| Petitioner, | : | Civil No. 11-4646(JBS) |
|  | : | [Criminal No. 05-355(JBS)] |
| v. | : |  |
| UNITED STATES OF AMERICA, | : | **OPINION** |
| Respondent. | : |  |
|  | : |  |

APPEARANCES:

Chang S. Liu, pro se
#124265
F.C.I. Cumberland
G-Unit
P.O. Box 1000
Cumberland, MD 21501

Steven J. D'Aguanno, Assistant U.S. Attorney
Office of the U.S. Attorney
District of New Jersey
4th Floor
Camden, NJ 08101


**SIMANDLE**, Chief Judge:

## I.  INTRODUCTION

This matter is before the Court on a pro se application by
Petitioner Chang S. Liu for habeas corpus relief vacating his
sentence under 28 U.S.C. § 2255. [Docket Item 1.]  Petitioner
pled guilty to a one-count Indictment charging conspiracy to
violate the Racketeer Influenced and Corrupt Organizations Act,
18 U.S.C. § 1962 (RICO) and Petitioner was sentenced to 135
months imprisonment.

Petitioner's present habeas petition asserts that he was incorrectly assigned a four-point enhancement for a leadership role in the RICO conspiracy for sentencing purposes pursuant to U.S.S.G. § 3B1.1(a). The Petitioner argues his defense counsel, Martin Schmuckler of New York City, was ineffective for failing to investigate his entrapment defense and informing him that if Petitioner pled guilty he would receive minimal if any jail time. In addition, Petitioner maintains he never signed the Application to Plead Guilty and insists that his attorney forged his signature on the document. Petitioner also raises objections to the presentence report which were given to his attorney prior to sentencing but ultimately withdrawn by his attorney and not filed with the court. [Docket Items 1, 4, 5, 7.]

For the reasons discussed herein, the court will deny Petitioner's application for habeas corpus relief because the Petitioner knowingly and voluntarily waived his right to collaterally attack his sentence when he entered into his plea agreement.

## II. BACKGROUND

On May 10, 2005, a grand jury returned a 58-count Indictment against Petitioner, his wife May Liu, and numerous other individuals. (App.[1] 1.) United States v. Chang Shan Liu, Crim.

---

[1] "App." refers to the Appendix to Respondent's brief. [Docket Item 20-1.] This Appendix contains the Indictment, the plea agreement, the application to enter plea of guilty,

No. 05-355-02(JBS).  The Indictment charged Petitioner in Counts
2 through 51 and Counts 54 through 58 with violations of 18
U.S.C. §§ 371, 545, 2320, 2342, 1956, and 1957 for his
involvement in trafficking counterfeit and contraband cigarettes,
money laundering and trafficking in goods bearing counterfeit
marks. (App. 6.)  The first count of the Indictment charged
Petitioner with a racketeering conspiracy and named his wife, May
Liu, Cheng Ming Hsu ("Bruce"), and Co Khanh Tang as co-
conspirators.  (App. 12.)

Prior to the Indictment, Petitioner's wife and co-defendant
May Liu suffered a debilitating stroke.  (Docket No. 05-cr-355,
Docket Item 97.) Petitioner and his wife, May Liu, initially
entered a plea of not guilty.

**A. Grounds Raised by Petitioner**

On August 11, 2011, Petitioner filed the instant motion to
vacate, set aside or correct his sentence pursuant to 28 U.S.C. §
2255.[2]  [Docket Item 1.]  The Petitioner relies on several
grounds to support his application for habeas corpus relief.  In
particular, Petitioner primarily argues he did not understand
that his plea agreement included a stipulation to a leadership

_____

transcripts from the Rule 11 hearing and sentencing, notice of
appeal, declaration of counsel and several letters.

[2] The timeliness of Petitioner's motion was already
addressed by the court in its May 14, 2012 Memorandum Opinion,
where the court held equitable tolling was appropriate and
Petitioner's § 2255 motion was deemed timely.  [Docket Item 15.]

role in the conspiracy and consequently, a four-point enhancement. Petitioner also argues that his counsel was ineffective. First, Petitioner maintains his counsel failed to fully investigate his entrapment defense and failed to timely object to the characterization of his role as a leader or organizer in the conspiracy. Petitioner points to his objections to the PSR which were withdrawn by counsel prior to sentencing in support of his argument. Second, Petitioner contends his counsel informed him he would receive little if any jail time for pleading guilty. Petitioner maintains that if he had known he could face over twelve years in prison he would not have pled guilty. In addition, Petitioner alleges his attorney forged his signature on the Application to Plead Guilty and he has no recollection of reading or signing this document.[3]

The government filed opposition to this petition. First,

---

[3] Petitioner further argues that his counsel never informed him he was licensed only in New York and he does not know whether his counsel was authorized to represent him in the District of New Jersey. Attorneys are not required to be members of the bar of District Court of New Jersey in order to represent defendants in a criminal proceeding. See Fed. R. Crim. P. 44(a); L. Crim. R. 44.1(a). Instead, attorneys who are not a member of the bar of this court are required to certify that "he or she is a member in good standing of the bar of a court of the United States or of the highest court of a state, who is not under suspension or disbarment of any court, and shall indicate the bar(s) of which he or she is a member and the year(s) of admission." L. Crim. R. 44.1. In this case, Mr. Schmukler entered a written notice of appearance indicating his bar code and New York Office address. [Crim. No. 05-355, Docket Item 50.] Therefore, Mr. Schmukler was authorized to represent Petitioner in the underlying criminal action.

the government argues that Petitioner entered into his plea agreement knowingly and voluntarily. As part of that plea agreement, Petitioner waived his rights to bring a Section 2255 petition so long as he was sentenced within or below the Guideline range for a Level 33 offense. Since Petitioner was sentenced within the Guideline range for a Level 33 offense, the government argues Petitioner waived his rights to bring the instant action and his motion to vacate should be denied.

The government also addressed the merits of Petitioner's ineffective assistance of counsel claims. The government argues the Petitioner is unable to show that he was prejudiced by his counsel's decision because he has not proved that if counsel took the actions about which Petitioner claims, there would have been a different result. The government argues that Petitioner must show that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. The government states Petitioner cannot meet this burden.

Finally, with regard to Petitioner's arguments about the length of his sentence and his alleged forged signature, the government contends these are meritless. The government argues that the court fully disclosed to the Petitioner that the plea agreement stipulated to a Level 33 offense which could result in 135-168 months in prison and that neither the court nor the parties could make any guarantees about what his sentence would

be.  Rather, the government maintains the court explained that
sentencing was within the sole discretion of the court, that the
Guidelines were advisory, and his sentence could not be
determined until the PSR was received.  In addition, the
government states that the court asked Petitioner about his
Application to Plead Guilty on the Record and confirmed that
Petitioner had indeed signed the document.  Therefore, the
government maintains Petitioner's arguments are without merit.

Petitioner filed a reply to the government's answer.
Petitioner reiterates that he was not aware he was pleading to a
four-point enhancement as a leader of the conspiracy.  Petitioner
also argues that the government correctly states that the only
reason he pled guilty was to dismiss the charges against his
wife.  Petitioner states in his reply that due to his wife's
debilitated condition after her stroke, he wanted to ensure she
would not receive a prison sentence and could continue to be
cared for at home.  Petitioner maintains his counsel told him
"the only way to avoid a trial and prison for his wife was to
accept the guilty plea offered by the government."  (Pet'r's
Reply at 5.)

**B. Rule 11 Hearing**

On December 12, 2006, Petitioner entered an application to
plead guilty and executed a plea agreement.  (Docket No. 05-cr-
355, Docket Items 109, 110.)  The plea agreement provided that

Petitioner would plead guilty to Count One of the Indictment.  In exchange, the government would dismiss the remaining counts, dismiss a separately pending indictment against Petitioner, and dismiss the charges against Petitioner's wife.  (App. 89.)  The plea agreement also incorporated several stipulations regarding sentencing.  Importantly, the plea agreement stipulated that "Defendant was an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive.  Pursuant to U.S.S.G. § 3B1.1(a), the offense level is increased by 4 levels."  (App. 96 ¶ 5(d)).  This caused the offense level to be increased by four levels pursuant to U.S.S.G. § 3B1.1 and resulted in an overall offense level of 33.  (App. 96-98.)

A lengthy plea hearing was held the same day before the undersigned.  First, the government put the terms of the plea on the record, including its agreement to dismiss the remaining charges against Petitioner, dismiss the additional indictment against Petitioner and dismiss the charges against May Liu.  (App. 108:22:-109:7.)  The government informed the court that the plea agreement stipulated to an Offense Level 33.  (App. 109:21-110:4.)

The court questioned Petitioner's counsel on whether he explained to Petitioner what the sentencing guidelines mean.  Counsel responded, "Well, as much as you can explain to any layperson, Judge, what sentencing guidelines mean.  I've

explained them insofar as they need to be explained in connection with these proceedings." (App. 111:19-22.) Counsel later remarked that it was his intent during sentencing to "take issue with the level of the defendant's culpability. And we consider ourselves of course bound by the agreements that we have made here, but there are still explanatory circumstances that your Honor might also consider under 3553(a)." (App. 113:6-10.) Counsel also argued that Petitioner reserved the right to raise his wife's condition and his role as caretaker at sentencing, and this provision was added in writing. (App. at 6 ¶ 15.)

The court then asked Petitioner to take the stand and establish the factual basis for his plea. Petitioner was sworn in and informed that if he knowingly gave a false answer, he could be subject to perjury. (App. 126:18-20.) Petitioner stated that English was his second language, but he considered himself fully fluent in English in reading and writing and did not need the assistance of an interpreter. (App. 126:7-128:4.) Petitioner then affirmed on the record that he reviewed his application for permission to enter a plea of guilty with his attorney, that the information contained therein was true and correct and that he signed it on the last page. (App. 128:25-129:14.) The court asked expressly:

> COURT: And did you sign it [the Application for Permission to Enter Plea of Guilty entered as Ex. C-2] on the next to last page?

LIU: Yes, I did.

(App. 129:12-14.)

The court then asked Petitioner if he had reviewed the
Indictment with his attorney and if he understood what the
Indictment charged against him.  Petitioner indicated he did.
(App. 129:19-24.)  The court then inquired whether Petitioner was
pleading guilty voluntarily:

COURT:  Is it your own personal decision to plead guilty?

LIU: Yes.

COURT:  In other words, are you pleading guilty because
that's what you feel is best for you?

LIU:  Yes, yes, I am.

COURT: Are you pleading guilty of your own free will?

LIU: Yes.

COURT: And has anyone forced you to plead guilty?

LIU: No.

(App. 131:1-12.)

The court next discussed the terms of the plea agreement
with Petitioner.  Petitioner testified that he read the plea
agreement and gone over it carefully with counsel.  He affirmed
that his counsel explained what the plea agreement means.  He
testified that counsel explained the stipulations to him and that
he understood those stipulations (App. 131:20-132:17), and that
he accepted those stipulations as part of his plea agreement
(App. 132:15-17).  The court asked:

9

> COURT: And are the stipulations true and correct as far as you know?
>
> LIU: Yes.
>
> COURT: And then do you accept your entire plea agreement?
>
> LIU: Yes, I am.

(App. 132:18-23.)  He testified that he signed his plea agreement.  (App. 132:24-133:1.)

Finally, the court discussed the rights Petitioner would give up by pleading guilty and reviewed the sentencing guidelines with Petitioner.  The undersigned explained that "as I sit here today, I have no idea what your sentence will be or what it should be, and that remains to be determined."  (App. 136:21-23.) The court discussed how a conviction for a racketeering conspiracy carried a maximum penalty of up to 20 years in federal prison and there was no possibility of parole in the federal system.  (App. 137:3-24.)  The court also explained that a fine could be imposed amounting to the greatest of $250,000 or twice the gross profits or proceeds of the crime.  (App. 138:12-15.) The court then discussed the forfeiture provisions implicated in this case.  (App. 139:7-16.)  Petitioner understood all of this sentencing information, including the fact that he risked being sentenced up to 20 years in prison if he pled guilty to Count 1.

The court then described, in minute detail, how the sentencing guidelines work and how his sentence would be computed if the court ultimately determined his offense level was 33, as

stipulated by the parties in the plea agreement.

THE COURT: All right. Mr. Liu, do you understand that the first score I mentioned, which is your offense level, is the score that applies to the seriousness of your offense. It looks at what actually happened, what your role was in the offense, how much money was involved, what the nature of the victims were, and it looks at all relevant conduct which contributed to your offense, and assigns a certain number of points in accordance with the guidelines. The points are added up and that gives you your total offense level. In this chart -- I'm sorry; in your plea agreement, you stipulated that offense level 33 seems to be the appropriate offense level. And so I'll take that as an example.
The second score I mentioned is your criminal history category. This looks at whether you've been previously convicted of any crimes, whether federal, state or local. And the more prior convictions and more aggravated those circumstances are, then the worse is your criminal history category running from 1 to 6. Do you have any prior convictions?

LIU: No.

THE COURT: Okay. The probation department will do a records check, and assuming you have no prior convictions then you're at the most favorable category, which is category one. If something comes up that will be disclosed in the probation report, you'll have an opportunity to contest that. But if it's accurate then points can be added and that can put you in a higher criminal history category. If we just say for today's purposes, for example, that you're in category one, then we look at level 33, if that's what it turns out to be, we look at criminal history category one and we see where the two scores meet. And what we give is an advisory guideline range, that is, what's recommended between 135 and 168 months of imprisonment in this example. Do you see this?

LIU: Yes, yes, I do.

THE COURT: Now, I said that they're advisory, that means I'm not bound by this score or by the guidelines or by the guideline range. But it is one factor that I must take into account in determining a just sentence. Are you with me so far?

LIU: Yes, yes, I am.

THE COURT: And there's other factors that must be considered, and those are the other 3553(a) factors, that include your background and characteristics, the nature circumstances and seriousness of your crime, the need to compensate victims, the need for rehabilitating you, the need for deterring you and others from committing similar crimes, the need to punish, the need to protect society, and also any unusual features that would distinguish your case from other cases must all be taken into account. And when I've heard everybody's views on that, then for the first time I'm in a position to determine a just sentence. Now, what do I mean by just sentence. I mean a sentence that's sufficient, but no greater than necessary to satisfy the purposes that Congress has set for sentencing in federal court, as applied to your individual case. Do you understand that?

LIU: Yes, I do, your Honor.

THE COURT: And are you willing to take these risks that are entailed with your sentencing, that you may receive a sentence that's different from what you hoped for or what you expect? Do you understand that?

LIU: Yes.

THE COURT: And do you understand that there is no agreement as to what your sentence will actually be?

LIU: Yes, I do.

THE COURT: And finally do you understand you'll not be permitted to withdraw your plea of guilty on the ground that your advisory guideline range is different from what you hoped for or expect, or on the ground that the sentence you receive is different than from what you hope or expect; do you realize that?

LIU: Yes, I do.

THE COURT: And do you have any questions about sentencing?

LIU: No, no, your Honor.

THE COURT: And have you discussed all this with your

attorney?

LIU: Yes.

(App. 142:6-145:9.)

The court then permitted AUSA Mitchell to examine Petitioner to establish the factual basis for his plea. Petitioner admitted to engaging in a lengthy and serious pattern of illegal activity, including certain Racketeering Acts, from November 1999 through August 2005, in New Jersey, California and Illinois, as charged in Count One. (App. 147:4-12.)

Petitioner testified that he was responsible for passing documents from Mr. Hsu ("Bruce") to undercover agents. Petitioner stated, "I only talked to the undercover agents when Mr. Hsu has something, wants to ship to states and want me to talk to the agents. Then I act on his request, then I talk to the agent." (App. 148:9-12.)

Petitioner averred his involvement in multiple transactions of counterfeit cigarettes. He testified that he was involved in coordinating delivery and payment for counterfeit goods between Mr. Hsu and undercover agents, pursuant to Mr. Hsu's instructions. (App. 147:3-162:15.) Petitioner also admitted to translating at meetings between undercover agents and Mr. Hsu. (App. 155:25-156:1.)

After AUSA Mitchell finished her questioning, the court accepted Petitioner's plea of guilty and found the factual basis

adequate. (App. 163:12-14.) The court then discussed with
Petitioner his waiver of the right to appeal and his right to
file a Section 2255 petition challenging his sentence. The
waiver of the right to seek Section 2255 relief if he was
sentenced at Level 33 or less is contained in the plea agreement.
(App. 98 ¶ 13.) First, the court had Petitioner read the waiver
in the plea agreement to himself. Then the court engaged in the
following colloquy with regard to Petitioner's waiver of his
right to file a Section 2255 petition:

> THE COURT: Okay. The second right that I mentioned is
> called your right to obtain post conviction relief. Under
> Section 2255, every defendant has this right, which means
> that for one year after your conviction becomes final,
> you can file a petition with me, as the sentencing judge,
> asking me to take a second look at your case. And you
> would raise the ground that your conviction was
> unconstitutional or unlawful under federal law, or that
> your sentence was, and ask me to correct it. And you have
> that right for up to one year, unless you give it up. Do
> you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: This says that you wish to give up that right
> as long as your sentence is not greater than a level 33
> sentence would be, is that your understanding as well?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And similarly, if your sentence ends up being
> greater than a level 33 sentence would be, that you
> continue to retain your right to seek post conviction
> relief. Is that your understanding as well?
>
> THE DEFENDANT: Yes, yes.
>
> THE COURT: And have you also discussed this waiver with
> your attorney?

THE DEFENDANT: Yes.

THE COURT: All right. Do the attorneys believe that these answers also establish his knowing and voluntary waiver of the appellate and 2255 rights?

MS. MITCHELL: Yes, your Honor.

(App. 165:10-166:11.)

The court then accepted Petitioner's plea of guilty and found his waiver of appeal and Section 2255 relief knowing and voluntary. (App. 166:20-167:8.)

### C. Sentencing

On July 31, 2007, Petitioner was sentenced by the undersigned. (Docket No. 05-355, Docket Item 148.) Prior to sentencing, the Probation Office prepared a presentence report ("PSR") that described the offense conduct in this case. Petitioner filed objections to the PSR with his attorney on May 1, 2007. (App. 259.) In this letter, Petitioner denied being an "organizer or leader" of the group and stated the PSR was "totally incorrect" in characterizing him as such. (App. 259 ¶ 1.) Petitioner also took issue with the fact that the case against his wife, May Liu, was still pending. Petitioner stated, "To dismiss my wife from the case was the reason that I accepted the plea." (App. 259 ¶ 2.) Petitioner then stated in his letter numerous factual findings in the PSR that were incorrect and described his recollection of events. (App. 259-263.) In particular, Petitioner indicated that the undercover agents

sought out the Lius to assist with the criminal venture, and that initially the Lius believed the business was legal. (App. 259 ¶ 4, 260 ¶ 6.)

Petitioner's counsel forwarded this letter to the Probation Office on June 25, 2007. Three days later, on June 28, 2007, Petitioner's counsel wrote to the Probation Office and withdrew the letter and all objections to the PSR. Specifically, counsel stated:

> On June 25, 2007 I sent you a letter raising issues directly bearing on my client's culpability for the offense (attached thereto was a copy of Chang Liu's comments on the PSI Report). I have since had a conference call from AUSA's Hallie Mitchell and Steven D'Aguanno who also received this submission. I am appreciative of the professionalism they displayed in sharing their concerns on the issues that my objection letter and attachment would open. Their advice was sound and constructive. I consulted with my client fully about this matter and after further mature reflection and reconsideration, it is our wish to withdraw the letter of objection and we ask you not to consider it.

(App. 265.)

Petitioner's counsel averred in his declaration that he withdrew Petitioner's objections to the PSR because the Assistant United States Attorneys informed him it could result in Petitioner being denied a reduction in his offense level for acceptance of responsibility. (App. 271, Decl. of Martin L. Schmuckler, ¶ 18.) Consequently, Petitioner's objections were withdrawn and the PSR was finalized without reference to Petitioner's letter.

During sentencing, the court adopted the PSR and found the total offense level was 33 under the guidelines. (App. 177:25-178:3). This calculation included a four point enhancement due to Petitioner's role as a leader and organizer of the conspiracy, consistent with the stipulation in the plea agreement. The court also recognized Petitioner was in Criminal History Category I and the recommended Guideline range was custody between 135 months and 168 months. (App. 78:2-3.)

Petitioner's counsel filed a formal motion for a downward departure based on Petitioner's wife's condition. The court heard extensive oral argument, and in an oral opinion which spans ten pages of transcript, denied the motion. (App. 231-240.) The court also entertained argument from Petitioner's counsel regarding an entrapment defense and the role undercover agents played in the conspiracy and Petitioner's involvement. (App. 178-183.) Defendant then testified that he was his wife's primary caregiver and was present with her 24 hours a day to help her complete regular exercises and care for her daily needs. (App. 201-203.)

After explaining his caregiving role, Petitioner then asked the court whether he could "say one more thing." (App. 205:8-9.) Petitioner then went on to testify about his role in the conspiracy and his objections to the PSR. (App. 205:11208:4.) The court then questioned Petitioner on his role in the

conspiracy and the government objected to this colloquy. (App. 208:5-9.) The court then engaged in questioning with Petitioner to determine whether he accepted full responsibility for each of the things he pled guilty to at the Rule 11 hearing. (App. 209:9-12.) The court asked:

> COURT: . . . I've seen some 50 defendants in related cases now, is there anyone in the United States that had more authority than you did for these operations?
>
> THE DEFENDANT: I cannot truly honestly answer your question, Judge. I am only do what Bruce tell me to do. Well, as far as other 49 people or 50 people, what they were doing, I don't really have any idea so I really can't answer your question honestly.
>
> COURT: All right.

(App. 211:4-12.) After engaging in a further colloquy regarding Petitioner's role in the conspiracy, the court inquired why these issues were being discussed for the first time at sentencing. The court explained:

> COURT: By my entertaining what the defendant is saying, I'm not suggesting that I have any issues with this plea agreement. The defendant now is distancing himself from the money laundering racketeering acts that he pled guilty to and I need to determine what he's doing and what his attorney is doing because I'm puzzled by this. It is a development I didn't anticipate today either.

(App. 213:9-15.)

The court then questioned Petitioner's counsel on why these arguments were being brought up during sentencing rather than during the Rule 11 hearing. Petitioner's counsel assured the court that Petitioner did not wish to withdraw his plea:

MR. SCHMUKLER: It's not our intention to repudiate the plea agreement, Judge, or to have your Honor think or doubt as to whether he's accepting full responsibility. He took that plea and he's here to stand by it. He's not asking to have the plea agreement set aside, withdraw his guilty plea.

(App. 216:3-8.)

The government then responded to Petitioner's statements and addressed the court. In particular, the government explained the benefits of the plea bargain and the parties' stipulation to Petitioner's role in the conspiracy. Specifically, the government discussed the issue of Petitioner's wife and her questionable competency:

MS. MITCHELL: The government has its certain beliefs on why they believe they could prove May Liu's competency. For instance, we don't think that whether or not -- and, you know, we knew she has suffered a great deal and that's part of our calculation to be honest with you. And it is unfortunate that her speech is now severely hindered. And, obviously, that could be debated on her performance in front of others as opposed to what she could actually do. I mean, these are all things that could be evaluated by experts. But for the government, your Honor, the calculation doesn't end there. And the same with the case law, it's still could the person assist beyond whether or not they could speak, and these would be issues that we would have to address in a competency hearing. And these sort of multiple factors are why, you know, the government believed it wasn't proper to go forward against May Liu at this time so long as the defendant was willing to accept responsibility. And there were numerous calculations that went into why that decision was made.

. . .

Moreover, in this plea agreement, the government agrees to, at the conclusion of the defendant's sentencing, dismiss all the counts against May Liu in both of those indictments. So there was substantial benefit that was

19

provided to the defendant by not just walking in and accepting a plea to the Indictment.

(App. 222:15-223:7; 223:24-224:4.) The government then clarified that Petitioner's role in the conspiracy should not be considered by the court during sentencing because the parties stipulated to a four-point enhancement as part of the plea agreement.

> MS. MITCHELL: The only thing that we need to prove, which we don't even need to because it was a plea, is that he was a leader. And that's really the important thing.

> THE COURT: And the parties, of course, stipulated to the plus four enhancement for his superior role.

> MS. MITCHELL: Exactly.

(App. 224:10-15.)

At the conclusion of the sentencing hearing, the court denied Petitioner's motion for a downward departure based on his wife's condition. (App. 231:10-240:11.) In imposing this sentence, the court noted:

> COURT: And also, and perhaps most troubling, the defendant [distancing] himself from what he pled guilty to and admitted under oath during his guilty plea colloquy, which was to being a person with major responsibility for a series of transactions in concert with the undercover agents in which he played the dominant role in the United States in this international conspiracy.

> . . .

> The guidelines, however, have captured this in his enhanced role adjustment and also in including much of the conduct here.

(App. 240:24-241:6; 241:13-15.)

The undersigned then issued his sentence and committed

Petitioner to 135 months of imprisonment, consistent with the
bottom of the Guidelines range for a Level 33 offense as set
forth in the plea agreement and PSR.

**D. Direct Appeal**

Petitioner's counsel filed a timely notice of appeal and
argued that this court erred in denying Petitioner's motion for a
downward departure.  Specifically, counsel argued that the court
improperly relied on the fact that Petitioner's wife, May Liu,
had participated in his offense conduct and consequently violated
Petitioner's due process right to have his sentence predicated
only upon personal guilt.  (App. 255.)

The Third Circuit declined to exercise jurisdiction to hear
Petitioner's appeal and found Petitioner executed a knowing and
voluntary appellate waiver and failed to establish that the
waiver's enforcement would work a miscarriage of justice.  United
States v. Liu, 317 Fed. Appx. 166 (3d Cir. 2008).

Petitioner did not file a petition for a writ of certiorari.

**III.  DISCUSSION**

When considering a § 2255 petition the Court must hold an
evidentiary hearing, unless the record and motion of a case
conclusively indicate that the movant is not entitled to relief.
United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005).  The
Court is required to accept the Petitioner's factual allegations
as true so long as they are not "clearly frivolous," which the

Court can establish by examining the existing record.  Id.

Nevertheless, should the movant's petition contain "vague and

conclusory" allegations it is at the Court's discretion to

dispose of it without further inquiry.  United States v. Thomas,

221 F.3d 430, 437 (3d Cir. 2000).

A waiver in a plea agreement of the right to appeal and

collaterally attack a sentence is valid as long as it was entered

into knowingly and voluntarily and does not work a miscarriage of

justice.  United States v. Wilson, 429 F.3d 455, 458 (3d Cir.

2005).  "Whereas a defendant bears the burden of presenting an

argument that would render his waiver unknowing or involuntary, a

court has an affirmative duty both to examine the knowing and

voluntary nature of the waiver and to assure itself that its

enforcement works no miscarriage of justice, based on the record

evidence before it."  United States v. Mabry, 536 F.3d 231, 237-

38 (3d Cir. 2008.)

In this case, the record establishes that the Petitioner

knowingly and voluntarily entered into the collateral attack

waiver contained in his plea agreement.  The Petitioner was

questioned extensively by the undersigned at the Rule 11 hearing

regarding Petitioner's decision to waive his right to

collaterally attack his sentence under 28 U.S.C. § 2255.  As

noted above, at 14-15, during his Rule 11 hearing, Petitioner re-

read the portion of his plea agreement containing the waiver of

appeal and of post-conviction relief under § 2255 appearing in ¶
13 of his stipulations, which he then indicated he understood.
(App. 163:19-25.)  He also understood that a Level 33 sentence at
Criminal History Category I contemplated a recommended Guideline
Range extending up to 168 months in prison, and that he was
giving up his right to seek post-conviction relief under § 2255
if his sentence was 168 months or less.  (App. 164:13 to 165:3,
and 165:21 to 166:4.)  Petitioner confirmed that he discussed
waiver of his right to seek § 2255 relief with his attorney.
(App. 166:5-7.)

Specifically, the court engaged in the following colloquy
with Petitioner to ensure the waiver of his right to file a
Section 2255 petition was knowing and voluntary:

> THE COURT: Okay. The second right that I mentioned is
> called your right to obtain post conviction relief. Under
> Section 2255, every defendant has this right, which means
> that for one year after your conviction becomes final,
> you can file a petition with me, as the sentencing judge,
> asking me to take a second look at your case. And you
> would raise the ground that your conviction was
> unconstitutional or unlawful under federal law, or that
> your sentence was, and ask me to correct it. And you have
> that right for up to one year, unless you give it up. Do
> you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: This says that you wish to give up that right
> as long as your sentence is not greater than a level 33
> sentence would be, is that your understanding as well?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And similarly, if your sentence ends up being
> greater than a level 33 sentence would be, that you

continue to retain your right to seek post conviction
relief. Is that your understanding as well?

THE DEFENDANT: Yes, yes.

THE COURT: And have you also discussed this waiver with
your attorney?

THE DEFENDANT: Yes.

THE COURT: All right. Do the attorneys believe that these
answers also establish his knowing and voluntary waiver
of the appellate and 2255 rights?

MS. MITCHELL: Yes, your Honor.

THE COURT: To be extended in paragraph 33.

MS. MITCHELL: Yes, your Honor.

MR. SCHMUKLER: Yes, your Honor.

(App. 165:10-166:14.)  The Court found, at the conclusion of the

Rule 11 colloquy, that Petitioner's waiver of appeal and § 2255

relief was knowing and voluntary.  (App. 167:4-5.)  Petitioner

was sentenced at the bottom of the guideline range for a Level 33

offense.  Therefore, the court finds that the Petitioner

knowingly and voluntarily waived his right to bring the instant

application by entering into the collateral attack waiver in his

plea agreement.

This holding is in line with the Third Circuit's denial of

Petitioner's direct appeal.  In dismissing the appeal, the Third

Circuit noted that the Liu did "not dispute that he knowingly and

voluntarily waived his right to appeal during the guilty plea

proceeding." Liu, 317 Fed. Appx. at 168.  The Third Circuit

24

rejected Petitioner's argument that his waiver was subsequently invalidated during sentencing and instead found Liu's waiver was enforceable and that enforcement of the appellate waiver would not work a miscarriage of justice. Id. at 169. Consequently, because "Liu knowingly and voluntarily executed a valid appellate waiver" and failed to establish that its enforcement would work a miscarriage of justice, the Third Circuit declined to exercise jurisdiction over Liu's direct appeal. Id.

Here, the Petitioner again failed to present any evidence that he did not knowingly and voluntarily waive his right to collaterally attack his sentence under Section 2255. The Petitioner has likewise produced no evidence that the enforcement of the appellate waiver would work a miscarriage of justice.

To the extent Petitioner argues he is entitled to habeas relief because his counsel informed him he would serve little if any jail time, his counsel failed to investigate his entrapment defense, and his counsel forged his signature on the application to plead guilty; these arguments are without merit.

The plea agreement unequivocally states that the terms of the agreement are not binding on the sentencing judge and that Petitioner could be sentenced in accordance with the statutory maximum for the crimes pled, which in this case was 20 years for the conspiracy charge. This understanding was reinforced by the sentencing judge at the plea colloquy when the undersigned

reiterated that the court had discretion in imposing a sentence and Petitioner's sentence could not be determined until the presentence report was issued.

In fact, the Court went through the Guidelines with Petitioner on the record and explained how to calculate a Guideline score. The undersigned calculated the Guideline range for a level 33 offense and explained to Petitioner that the Guidelines recommended between 135 and 168 months of imprisonment. The court further emphasized:

> COURT: And finally do you understand you'll not be permitted to withdraw your plea of guilty on the ground that your advisory guideline range is different from what you hoped for or expect, or on the ground that the sentence you receive is different than from what you hope or expect; do you realize that?
>
> LIU: Yes, I do.

(App. 144:22-145:3.)

Therefore, any erroneous predictions about sentencing by Petitioner's counsel were dispelled by the court during the Rule 11 hearing and cannot be a basis for Petitioner's habeas application.

In addition, Petitioner testified during the Rule 11 hearing that he read and signed the Application to Enter a Plea of Guilty. Specifically, the court questioned:

> COURT: And did you sign it [the Application for Permission to Enter Plea of Guilty entered as Ex. C-2] on the next to last page?
>
> LIU: Yes, I did.

(App. 129:12-14.) The Petitioner cannot now be heard to claim that he did not see or sign this document. Petitioner has fabricated this ground. The Petitioner was shown the document during the Rule 11 hearing and authenticated his signature on the record. His argument now that his signature was forged by counsel is inherently incredible and cannot be a basis of his habeas petition.[4]

Finally, Petitioner argues that his counsel did not properly investigate his entrapment defense prior to his guilty plea. This ground has been waived due to Petitioner's knowing and voluntary waiver of Section 2255 relief. This argument is also without merit as the record clearly indicates his counsel understood Petitioner's entrapment defense and thoroughly investigated the merits of this defense.[5] First, Petitioner was

---

[4] Petitioner also argues in his papers that he was not present in court on December 12, 2006 when the guilty plea was taken. This argument is patently frivolous since the record clearly indicates Petitioner was present in court and gave testimony. This is one of several false allegations Petitioner has made before this Court.

[5] If, despite Petitioner's waiver, this Court were to reach this ground, it would be frivolous. The constitutional adequacy of counsel is determined under the two-part test of Strickland v. Washington, 466 U.S. 668, 687 (1984). To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate that (1) counsel's performance was so deficient as to deprive him of the representation guaranteed to him under the Sixth Amendment of the United States Constitution, and (2) the deficient performance prejudiced the defense by depriving the defendant of a fair trial. Strickland, 466 U.S. at 687. Under the first prong, Petitioner has not shown that counsel failed to pursue a productive line of defense or that his investigation of

clearly aware of the facts supporting his so-called entrapment
defense when he entered his plea of guilty and prior to his
sentencing.  This is evidenced by Petitioner's letter to his
attorney with his objections to the PSR.  (App. 259-263.)
Further, Petitioner's counsel engaged in an extensive dialogue
with the court during the sentencing hearing regarding a
potential entrapment defense.  Petitioner's counsel stated, "I
think any fair arbiter, whether it be a bench trial or before a
jury, would most likely have found that there was [sic] way too
much criminal violations irrespective of issues of propensity for
anyone to mount a claim of entrapment."  (App. 179.)
Petitioner's counsel further noted to the court during the Rule
11 hearing that he intended to raise issues regarding
Petitioner's level of culpability during sentencing for the court
to consider under § 3553(a).  (App. 113.)

     Therefore, it is clear from the record that counsel was
aware of Petitioner's potential entrapment defense and did not

---

entrapment was deficient, as explained in the text.  As to the
second prong, the failure to have asserted entrapment as a
defense did not change the result of this case.  It would have
been a frivolous exercise for Mr. Liu to claim that government
agents induced him to commit the criminal spree over more than
five years of time in New Jersey, California and Illinois,
wherein he told the agents where many loads of contraband and
counterfeit cigarettes would be smuggled into the country and
delivered for distribution, as he admitted in his extensive Rule
11 colloquy.  He also admitted his roles in money laundering and
directing where money should be sent, including overseas, and in
what amounts on many occasions, as charged.  He admitted
committing his crimes knowingly and voluntarily.

fail to investigate or pursue it.  Rather, Petitioner's counsel concluded it was not exculpatory and that the degree of government involvement at best could be used to argue a variance from the Guidelines at sentencing under § 3553(a).  This is a reasonable strategy for competent counsel, and is not a deviation from what the constitution requires.  Accordingly, this argument is insufficient to support Petitioner's application for habeas relief.

Accordingly, the court will deny Petitioner's Section 2255 application.

## IV.  CONCLUSION

As explained above, the Court has concluded that the motion and files and records of this case conclusively show that, as a matter of law, Petitioner is not entitled to relief because he knowingly and voluntarily waived his right to collaterally attack his sentence when he entered into his plea agreement.  Therefore, the Petitioner's motion to alter, vacate or amend his sentence pursuant to Section 2255 will be denied.  The accompanying Order will be entered.

## V.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(1)(B), "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a proceeding under section 2255." A certificate of appealability

may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To satisfy that standard, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, jurists of reason could not disagree with the Court's resolution of Petitioner's claims.  The conclusions reached in this Opinion are not close calls. Under the standard recited above, the Court will deny a certificate of appealability.


**August 26, 2013**             **s/ Jerome B. Simandle**
Date                            JEROME B. SIMANDLE
                                Chief U.S. District Judge